**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------

R.S. and S.S. o/b/o A.S.,

              Plaintiffs,        09 Civ. 9874 (JGK)

     - against -           **MEMORANDUM OPINION AND**
                                                               **ORDER**
LAKELAND CENTRAL SCHOOL DISTRICT,

              Defendant.
------------------------------------------------------------

**JOHN G. KOELTL, District Judge:**

    The plaintiffs, R.S. and S.S. (the "plaintiffs"), bring this action on behalf of their son, A.S., pursuant to the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. §§ 1400 et seq., against the Lakeland Central School District (the "District"). The plaintiffs appeal the decision of the State Review Officer ("SRO") denying their claim for reimbursement of A.S.'s tuition for Kildonan School, a private school at which they unilaterally placed A.S. for the 2007-08 school year. The SRO's decision affirmed the decision of an Impartial Hearing Officer ("IHO"). The parties have cross-moved for summary judgment. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 20 U.S.C. § 1415(i)(2)(A).

                                                                I.

    "Under the IDEA, states receiving federal funds are required to provide 'all children with disabilities' a 'free

appropriate public education.'" Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 107 (2d Cir. 2007) [hereinafter Gagliardo II] (quoting 20 U.S.C. § 1412(a)(1)(A)); see also Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 122 (2d Cir. 1998). A free appropriate public education ("FAPE") must provide "special education and related services tailored to meet the unique needs of a particular child, and be 'reasonably calculated to enable the child to receive educational benefits.'" Walczak, 142 F.3d at 122 (quoting Bd. Of Educ. V. Rowley, 458 U.S. 176, 207 (1982) (internal quotation marks and citation omitted)). Because the IDEA expresses a "strong preference for children with disabilities to be educated, 'to the maximum extent appropriate,' together with their non-disabled peers, special education and related services must be provided in the least restrictive setting consistent with a child's needs." Id.(internal citation omitted); see also Grim v. Rhinebeck Cent. Sch. Dist., 346 F.3d 377, 379 (2d Cir. 2003).

These services are administered through a written individualized education program ("IEP"), which must be updated at least annually. Walczak, 142 F.3d at 122; see also 20 U.S.C. § 1414(d). In New York, the responsibility for developing an appropriate IEP for a child is assigned to a local Committee on Special Education ("CSE"). Walczak, 142 F.3d at 123.

Parents in New York who wish to challenge their child's IEP as insufficient under the IDEA may request an impartial due process hearing before an IHO appointed by the local board of education. Id. (citing 20 U.S.C. § 1415(f) and N.Y. Educ. Law § 4404(1)). A party may appeal the decision of the IHO to an SRO, and the SRO's decision may be challenged in either state or federal court. Id. (citing 20 U.S.C. § 1415(g), 1415(i)(2)(A) and N.Y. Educ. Law § 4404(2)).

Under the IDEA, a district court independently reviews the administrative record, along with any additional evidence presented by the parties, and must determine by a preponderance of the evidence whether the IDEA's provisions have been met.[1] Grim, 346 F.3d at 380; see also Mrs. B. v. Milford Bd. of Educ., 103 F.3d 1114, 1120 (2d Cir. 1997). This independent review, however, is "by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." Rowley, 458 U.S. at 206. The Court of Appeals for the Second Circuit has explained that "federal courts reviewing administrative decisions must give 'due weight' to these proceedings, mindful

---

[1] Courts have noted that "summary judgment appears to be the most pragmatic procedural mechanism in the Federal Rules for resolving IDEA actions," but that "[t]he inquiry ... is not directed to discerning whether there are disputed issues of fact, but rather, whether the administrative record, together with any additional evidence, establishes that there has been compliance with IDEA's processes and that the child's educational needs have been appropriately addressed." Wall v. Mattituck-Cutchogue Sch. Dist., 945 F. Supp. 501, 508 (E.D.N.Y. 1996); see also Antonaccio v. Bd. of Educ. of Arlington Cent. Sch. Dist., 281 F. Supp. 2d 710, 714 (S.D.N.Y. 2003).

3

that the judiciary generally 'lack[s] the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy.' " Gagliardo, 489 F.3d at 113 (quoting Rowley, 458 U.S. at 206, 208; see also Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 191 (2d Cir. 2005). Deference to the decision in the administrative record is particularly appropriate when the administrative officers' review has been thorough and careful, and when the Court's decision is based solely on the administrative record. See Walczak, 142 F.3d at 129; Frank G. v. Bd. of Educ., 459 F.3d 356, 367 (2d Cir. 2006); see also S.W. v. N.Y.C. Dep't of Educ., 646 F. Supp. 2d 346, 351 (S.D.N.Y. 2009).

## II.

The following facts and procedural background are taken from the administrative record.

S.S. and R.S. are the adoptive parents of A.S. (Pls.' 56.1 Statement ¶ 8; Def.'s Resp. to Pls.' 56.1 Statement ("Def.'s 56.1 Resp.") ¶ 8.) A.S. was born in 1995 and, at the beginning of the 2007-08 school year, was twelve years old. (Pls.' 56.1 Statement ¶ 7; Def.'s 56.1 Resp. ¶ 7.) He is classified as a student with a learning disability and is eligible for special education services under the IDEA. (Pls.' 56.1 Statement ¶ 27; Def.'s 56.1 Resp. ¶ 27.)  A.S. has been a special education

student since preschool. (Pls.' 56.1 Statement ¶ 25; Def.'s 56.1 Resp. ¶ 25.)  A.S. attended public school in the District from preschool through fifth grade, which A.S. repeated at the plaintiffs' request. (Pls.' 56.1 Statement ¶¶ 25, 63; Def.'s 56.1 Resp. ¶¶ 25, 63.)

According to the plaintiffs, at the end of first grade A.S. had no reading skills and his speech was unintelligible. (Pls.' 56.1 Statement ¶ 31; Def.'s 56.1 Resp. ¶ 31.) S.S. testified that A.S.'s speech and reading problems persisted through the second time A.S. completed fifth grade. (Pls.' 56.1 Statement ¶ 66; Def.'s 56.1 Resp. ¶ 66.) Beginning in the third grade, the plaintiffs observed that A.S. was having social problems. (Pls.' 56.1 Statement ¶ 39; Def.'s 56.1 Resp. ¶ 39) According to S.S.'s testimony, A.S. began to throw tantrums and struggled to make friends. (Pls.' 56.1 Statement ¶ 39; Def.'s 56.1 Resp. ¶ 39.) In addition, A.S. was bullied and developed incredibly low self-esteem, calling himself "stupid" and "retarded." (Pls.' 56.1 Statement ¶ 46; Def.'s 56.1 Resp. ¶ 46.)

S.S. communicated with the CSE about the IEP it developed for A.S. each year throughout A.S.'s time in the District. (Pls.' 56.1 Statement ¶¶ 27, 32-33, 37, 52-54, 59, 63, 86; Def.'s 56.1 Resp. ¶¶ 27, 32-33, 37, 52-54, 59, 63, 86.) Dissatisfied with the District's IEP, the plaintiffs notified the District that they were rejecting the IEP proposal for the

5

2007-08 school year, and placing A.S. in Kildonan on March 5, 2007. (Def.'s 56.1 Statement ¶ 5; Pls.' Statement of Controverted Facts in Opposition to Defendant District's Motion for Summary Judgment[2] ("Pls.' Statement of Controverted Facts") ¶ 5.)

On April 27, 2007, Doctor Nelson Dorta, a Pediatric Neuropsychologist retained by the plaintiffs, evaluated A.S., and on June 4, 2007, he issued a Neuropsychological Evaluation report (the "Dorta Report") based on his evaluation. (Def.'s 56.1 Statement ¶ 6; Pls.' Statement of Controverted Facts ¶ 6; Def.'s 56.1 Resp. ¶ 111.) Dr. Dorta testified that A.S. had "classical dyslexia, with phonological difficulties and accompanying language difficulty," and that "A.S. needed a specialized program for children with language-based learning disorders." (Pls.' 56.1 Statement ¶ 16; Def.'s 56.1 Resp. ¶ 16.) Dr. Dorta also noted that A.S. had attention deficit disorder, and possibly fetal alcohol syndrome. (Pls.' 56.1 Statement ¶¶ 13, 122; Def.'s 56.1 Resp. ¶¶ 13, 122.)

The Dorta Report recommended that the specialized program for A.S. be "guided by an Orton Gillingham-based reading intervention approach delivered daily and intensely coupled with four times a week language therapy," as well as organizational

---

[2] This document is in fact the Plaintiffs' Response to Defendant's 56.1 Statement, but is labeled herein as the plaintiffs labeled the document.

6

skill training (Def.'s 56.1 Statement ¶¶ 7, 21; Pls.' Statement of Controverted Facts ¶¶ 7, 21.) Dr. Dorta advised the plaintiffs that speech and language therapy was necessary to enable A.S. to improve in reading and writing. (Def.'s 56.1 Statement ¶ 8; Pls.' Statement of Controverted Facts ¶ 8.) Dr. Dorta further emphasized this point when he testified that it was "very critical" that A.S. receive speech/language therapy from a speech/language pathologist who could collaborate with A.S.'s school to ensure continuity of service. (Def.'s 56.1 Statement ¶¶ 12-13; Pls.' Statement of Controverted Facts ¶¶ 12-13.)

Dr. Dorta also testified about the importance of providing A.S. an opportunity to read aloud, and integrating specialized reading instruction into all of A.S.'s courses in school (Def.'s 56.1 Statement ¶ 11, 20; Pls.' Statement of Controverted Facts ¶ 11, 20.) Dr. Dorta stated that oral reading activities should be "an integral part of [A.S.'s] reading program," in order to improve A.S.'s "ability to decode accurately and fluently." (Def.'s 56.1 Statement ¶¶ 19-20; Pls.' Statement of Controverted Facts ¶¶ 19-20.) Finally, Dr. Dorta stated that A.S. needed organizational skills training to address his poor organization, planning, and processing speed skills resulting from his attention deficit disorder. (Def.'s 56.1 Statement ¶ 21; Pls.' Statement of Controverted Facts ¶ 21.)

7

Beginning in March 2008, hearings were held before an IHO. The IHO issued a forty-one-page decision in which she denied the plaintiffs' request for reimbursement. The IHO found that the plaintiffs met their burden to show that the District failed to provide a program that was reasonably calculated to enable A.S. to receive meaningful educational benefits. (IHO decision at 30.) However, the IHO then determined that the plaintiffs' unilateral placement at Kildonan was not appropriate. (Id. at 35-39.)

Although the IHO found that the one-on-one reading instruction was individually tailored to address A.S., she found that Kildonan failed to satisfy Dr. Dorta's requirement that A.S. read aloud in order to address his difficulty with decoding, and noted that there was no evidence as to "precisely how [the Orton-Gillingham methodology] was used in the classroom." (Id. at 34-35, 38.) In addition, the IHO found that Kildonan did not provide A.S. with speech/language therapy, and that the plaintiffs failed to submit any evidence as to when and how much speech/language therapy they provided privately (Id. at 38-39.) Finally, although the IHO credited the plaintiffs' testimony regarding A.S.'s progress at Kildonan, she found that, because Kildonan administered no standardized tests, and progress reports and grades were not based on objective norms or standards, "a meaningful assessment of [A.S.'s] actual progress

8

. . . [was] not possible." (Id. at 33.)  The IHO concluded that the evidence presented was not sufficient to establish that A.S. made appropriate educational progress at Kildonan during the 2007-08 school year.[3] (Id.)

The plaintiffs appealed the IHO decision to the SRO. The SRO affirmed the IHO decision, finding that the IHO correctly determined that the district failed to offer A.S. a FAPE for the 2007-08 school year, and that the plaintiffs failed to establish that their unilateral placement at Kildonan for the 2007-08 school year was appropriate for A.S.'s special education needs. (SRO decision at 18.)

Following the decision by the SRO, the plaintiffs filed this action pursuant to 20 U.S.C. § 1415(i)(2).

### III.

Parents who believe that their child's IEP fails to meet the requirements of the IDEA may, at their own financial risk, enroll the child in a private school and seek retroactive reimbursement of tuition from the state. See Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. 359, 370 (1985). The Supreme Court has established a two-part test to determine whether a party is entitled to reimbursement: "(1) was the IEP proposed by the school district inappropriate; [and] (2) was the

---

[3] In light of these findings and conclusions, the IHO did not discuss the absence of counseling and an organizational skills class from Kildonan. (IHO decision at 39.)

9

private placement appropriate to the child's needs." Gagliardo II, 489 F.3d at 111-12 (citing Burlington, 471 U.S. at 370). The burden rests with the party seeking relief, which in this case is the plaintiff. See Schaffer v. Weast, 546 U.S. 49, 56 (2005). If the two-part Burlington test is satisfied, the Court has discretion to consider relevant equitable factors in fashioning relief. Gagliardo II, 489 F.3d at 112 (citing Florence County Sch. Dist. Four v. Carter, 510 U.S. 7, 16 (1993)). In this case, the parties do not dispute the IHO and SRO finding that the District failed to provide A.S. with a FAPE. Thus, the only issue is whether the plaintiffs' unilateral placement of A.S. at Kildonan was appropriate.

The plaintiff bears the burden to prove that the unilateral private placement was appropriate. Gagliardo II, 489 F.3d at 112 (citing M.S. ex rel. S.S. v. Bd. Of Educ., 231 F.3d 96, 104 (2d Cir. 2000)). In determining whether parents have met this burden, the considerations are similar to those employed in determining whether the school district's placement was appropriate. Frank G., 459 F.3d at 364. While evidence of a student's success at the unilateral placement is relevant to the court's review, such evidence is not sufficient by itself to establish that the placement was appropriate. Gagliardo II, 489 F.3d at 115 (citing Berger v. Medina City Sch. Dist., 348 F.3d 513, 522 (6th Cir. 2003) and Rafferty v. Cranston Pub. Sch.

10

Comm., 315 F.3d 21, 26-27 (1st Cir. 2002)). Courts consider the "totality of the circumstances" and parents "need only demonstrate that the placement provides educational instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction." Frank G., 459 F.3d at 364-65 (internal quotation marks omitted); see also Jennifer D. ex rel. Travis D. v. N.Y.C. Dept. of Educ., 550 F. Supp. 2d 420, 434 (S.D.N.Y. 2008).

    The plaintiffs have not satisfied their burden of showing that A.S.'s placement at Kildonan was specifically designed to meet his unique needs. Kildonan does not satisfy several of Dr. Dorta's requirements. Dr. Dorta found that speech/language therapy was critical to remediate A.S.'s phonological and expressive language difficulties. (Hr'g Tr. at 1378.) Accordingly, the Dorta Report recommended speech/language therapy four times a week (Id. at 1314-16.) Originally, the plaintiffs acknowledged that Kildonan did not provide speech/language therapy, but claimed they provided it privately. (Id. at 1039.) However, the plaintiffs did not offer any evidence as to the qualifications of the provider of the therapy, the focus of the therapy, or when and how much therapy was provided to A.S. during the 2007-08 school year. (IHO decision at 39.)

11

The plaintiffs now contend that Kildonan's program was "so language based and immersive" that there was no need to provide a one-on-one speech language course or separate private speech/language services. (Pls.' 56.1 Statement ¶ 129; Pls.' Statement of Controverted Facts ¶¶ 22-23.) The plaintiffs also allege that Dr. Dorta testified to the adequacy of Kildonan's overall program to satisfy A.S.'s speech and language therapy needs. (Pls.' Statement of Controverted Facts ¶¶ 22-23.) However, the plaintiffs cite no testimony from Dr. Dorta that actually supports that proposition. Although Dr. Dorta testified that it was unimportant where A.S. received speech/language therapy, as long as he received it, he also stated that it would concern him if A.S. were not receiving any speech/language therapy at Kildonan because it was important that there be as much continuity of service as possible. (Hr'g Tr. at 1374-76.) At no point did Dr. Dorta attest to the adequacy of Kildonan's alleged speech/language services. In addition, Doctor Robert Lane, the director of Kildonan, testified that Kildonan does not employ any speech and language teachers or pathologists, and that he was not aware that A.S. was receiving any kind of expressive language therapy privately. (Hr'g Tr. at 2114.) The plaintiffs' claim that Kildonan was so language based and immersive as to satisfy Dr. Dorta's speech/therapy recommendation is unfounded. Moreover, the plaintiffs have not

12

offered any evidence regarding the type and quality of speech/language therapy A.S. allegedly received privately.

Dr. Dorta also emphasized the importance of A.S. reading aloud on a regular basis in order to improve his ability to decode accurately and fluently. (Hr'g Tr. at 2017-18.) He explained that a program that did not require a student to read aloud in four periods out of six, or three hours out of four and a half, would be "suspect or unlikely to be helpful to A.S." (Id. at 2268-69.) Dr. Lane testified that students are only required to read aloud in a one-on-one reading tutorial, which constitutes one of six academic periods in the school day. (Id. at 2092-98.) The five remaining academic periods consist of four, forty-five minute content area subjects, and a forty-five minute supervised study hall. (Id.) Dr. Lane explained that while students are not required to read aloud in the four content area periods, they often volunteer to read aloud, and that A.S. has volunteered to read aloud. (Id. at 1243-44, 2095.) However, as noted by the IHO, there is no evidence that A.S. routinely volunteered to read in his content area subjects.[4] (IHO decision at 35.)

---

[4] Plaintiffs claim that Kildonan has a program outside of the one-on-one tutorials in which A.S. is required to read aloud, citing page 1231-1249 of the hearing transcript. (Pls.' Statement of Controverted Facts ¶ 19.) However, it is unclear from the transcript to what, if any, program plaintiffs are referring.

13

The plaintiffs urge the court to consider the significant progress A.S. allegedly made while at Kildonan. However, the plaintiffs have not presented objective evidence through which the Court can evaluate A.S.'s progress. In addition, Dr. Dorta stated that A.S. had not been engaged in intensive remediation for long enough to see even incremental progress.[5] (Hr'g Tr. at 1343-44.) In any event, evidence of progress itself is not sufficient to establish that a unilateral placement is appropriate where there is evidence that A.S.'s unique educational needs were not addressed. Gagliardo II, 489 F.3d at 115.

The Court also finds that the IHO decision was well-reasoned and thorough, and thus warrants deference. The plaintiffs argue that the IHO ignored or gave insufficient weight to her finding that the District failed to provide A.S. with a FAPE when considering whether Kildonan was an appropriate placement. However, the IHO's evaluation of whether the District satisfied the requirements of the IDEA is entirely separate from the determination of whether the plaintiffs' unilateral placement was appropriate and thus warrants reimbursement. The IHO accurately applied the standard to determine whether the

---

[5] Although Dr. Lane testified that A.S.'s standardized test scores showed improvement, Dr. Dorta's analysis suggests that any indication of improvement was within the standard error. (Hr'g Tr. at 1248, 1340-47.)

unilateral placement was appropriate and therefore warrants deference.

The plaintiffs also challenge the impartiality of the SRO and claim that, because of the SRO's alleged bias, the SRO decision is not entitled to deference. The statistics provided by the plaintiffs alone do not support a claim of bias. See C.G. & L.G. ex rel. B.G. v. N.Y.C. Dep't of Educ., No. 09 Civ. 6169, 2010 WL 44493869, at *5 (S.D.N.Y. Oct. 25, 2010); Adrianne v. Lakeland Cent. Sch. Dist., 686 F. Supp. 2d 361, 368 (S.D.N.Y 2010). Furthermore, the plaintiffs' argument has been rejected repeatedly, and there is no other reasonable basis for inferring bias. See, e.g., W.T. & K.T. ex rel J.T. v. Bd. of Educ. of School Dist. of N.Y.C., 716 F. Supp. 2d 270, 286 (S.D.N.Y. 2010); E.S. & M.S. ex rel. B.S. v. Katonah-Lewisboro Sch. Dist., No. 09 Civ. 4770, 2010 WL 3835008, at *13 (S.D.N.Y. Sept. 30, 2010); R.L. & A.Z. ex rel. E.Z.-L. v. N.Y.C. Dep't of Educ., No. 09 Civ. 8998, 2011 WL 207974, at *11 n. 7 (S.D.N.Y. Jan. 24, 2011). In any event, the court may rely on the well-reasoned IHO decision.

Because the Court has found that the plaintiffs failed to meet their burden to establish that Kildonan was an appropriate unilateral placement, the Court need not evaluate any equitable considerations.

CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed above, the arguments are either moot or without merit. For the reasons discussed above, the District's motion for summary judgment (Docket No. 18) is **granted** and the plaintiffs' motion for summary judgment (Docket No. 13) is **denied**. The Clerk is directed to enter judgment for the defendant and to close this case.

**SO ORDERED.**

Dated:  New York, New York
        March 30, 2011

_____
John G. Koeltl
United States District Judge